

The following constitutes the order of the Court.
Signed: November 1, 2023

_____

**Charles Novack**
**U.S. Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 21-41263 CN<br>Chapter 13 |
| FARIDEH ERICKSON, | |
| Debtor. | |
| FARIDEH ERICKSON, | Adversary No. 22-4002 CN |
| Plaintiff, | |
| vs. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| RTED AMERICA, | |
| Defendant. | |

On September 15, 2023, this court heard the cross-motions for summary judgment filed by plaintiff Farideh Erickson ("Erickson") and defendant RTED America, LLC ("RTED"). All appearances were noted on the record. RTED holds the second deed of trust against Erickson's residence, located at 1205 Beach Court, Discovery Bay, California. Erickson's deceased husband, Blair Erickson, purchased the Beach Court property a few months after their July 2006 marriage. Notwithstanding their recent nuptials and with Erickson's full knowledge and consent, Blair Erickson took title to the property as "an

unmarried man" and was the sole signatory on the two notes and deeds of trust that were used to purchase the Beach Court property. Now, almost sixteen years (and two loan modifications) later, Erickson seeks – through the doctrine of recoupment – to void RTED's junior deed of trust under California Family Code §1102(b), which authorizes non-signing spouses to void encumbrances against community property. Erickson also seeks to offset (again through the recoupment doctrine) RTED's claim with the damages she allegedly incurred from violations arising under the federal Truth in Lending Act and California's Rosenthal Fair Debt Collection Act.

RTED moves for summary judgment under a fusillade of affirmative defenses which it contends carry the day. RTED argues that Family Code §1102(b) is inapplicable because the Beach Court property was not community property and even if it could be so designated, Erickson released all equitable and legal claims (including her recoupment claims) when she modified the RTED note in 2015. It further contends that Erickson is precluded from asserting recoupment on grounds of unclean hands and estoppel and argues that Erickson lacks standing to raise many of her legal claims. Finally, it contends that much of its conduct was privileged under California law.

This adversary proceeding is a procedural morass. RTED timely filed its secured proof of claim in the underlying Chapter 13 case. Rather than objecting to it under Bankruptcy Code § 502(b)(1) and Federal Rule of Bankruptcy Procedure 3007, Erickson filed an adversary proceeding because of her request to void RTED's deed of trust. *See* Federal Rules of Bankruptcy Procedure 3007(b) and 7001(2). The interesting twist is that Erickson, as the plaintiff, is asserting purely defensive doctrines to achieve her objectives. The summary judgment motions intertwine claim objection and adversary proceeding procedure, leaving this court to sort it out. The court has done the best it can to accommodate.

The summary judgment standard under Rule 56 of the Federal Rules of Civil Procedure, incorporated via Rule 7056 of the Federal Rules of Bankruptcy Procedure, is well established. A party is entitled to summary judgment if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The trial court does not weigh the evidence but merely determines whether material facts remain in dispute. *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 818 (9th Cir. 2014). This court must also draw all reasonable inferences in favor of the non-moving party, and the court must evaluate each of the cross-motions on their merits. *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010). A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The movant has both the initial burden of production and the ultimate burden of persuasion on their summary judgment motion. *Nissan Fire & Marine, Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted).

The pertinent facts are mostly undisputed. Erickson married Blair Erickson on June 23, 2006, and Blair Erickson ("Blair") purchased the Beach Court property in November 2006 for $800,000. The Beach Court property has served as Erickson's residence since that time. Blair fully financed the purchase by borrowing $640,000 on a first deed of trust and $160,000 on a second deed of trust, the latter of which is presently held by RTED.[1] Blair and Erickson used a mortgage broker to obtain this financing, and the mortgage broker knew that Blair and Erickson were husband and wife. Because Blair had better credit than Erickson, the mortgage broker recommended that Blair buy the Beach Court property in his name only. In fact, Blair took title to the Beach Court property as an "unmarried man," and he is so described in the two notes and deeds of trust against the property (which

---

[1] The transaction was a true "no money down" purchase, and Erickson and Blair did not put any of their own funds into the sale escrow. This type of transaction was commonplace in the immediate, pre "Great Recession" era, and second deeds of trust such as this often became "zombie mortgages" after the Wall Street meltdown.

Erickson did not sign). Erickson fully understood how these documents were prepared and executed.[2]

Blair stopped making payments on the junior note in January 2010, and he passed away in 2012. In August 2012, a few months before his death, Blair obtained a HAMP loan modification on the first note and deed of trust, then held by JP Morgan Chase Bank. Only Blair was identified as the "borrower" under the HAMP loan agreement, and Erickson was not a party to it. Blair and the bank acknowledged in the HAMP loan agreement that Blair owed $816,116.55 on the senior note, and the bank agreed to defer $418,300 of the note's principal balance and reduce this deferred balance by one-third each year for the next three years if Blair was current on his monthly payments on January 1, 2013, 2014, and 2015. Blair (and then Erickson) sufficiently made these monthly payments to reduce the senior note to approximately $395,000 by March 2015. The HAMP loan agreement with JP Morgan Chase did not prompt Blair to recommence making payments on the junior note.

The junior note and deed of trust were transferred to RTED in December 2014 (now, the "RTED Note"), and it recorded a Notice of Default ("NOD") under its deed of trust on March 5, 2015. The NOD stated that the RTED Note was $107,963.33 in arrears.[3]

_____

[2] In her initial, supporting declaration, Erickson states that she "believes" that the mortgage broker was a "dual agent" acting on behalf of both Blair and Realty Mortgage, LLC, the original holder of the second deed of trust. Erickson did not submit any documentary evidence to support this statement; moreover, she stated in her deposition that she had no personal knowledge regarding who the loan broker represented other than Blair. The court therefore discounts this statement in her supporting declaration. *See* Fed.R.Civ.P. 56(c)(4).

[3] Erickson asserts that she was surprised when she received the NOD because she believed that the note had been forgiven. She offers no documentation in support of this contention and her complaint does not seek relief on this ground. She also argues that RTED could not have known what the loan balance or arrears were in March 2015 because it did not obtain a "Life of Loan Transaction History" when it acquired the loan. This accusation is part of Erickson's effort to undermine the parties' 2015 loan modification agreement that, among other things, purportedly released her recoupment claims against RTED. This argument is problematic for several reasons: 1) Erickson does not dispute that Blair defaulted on the junior note in January 2010 and that no payments were made thereafter until the RTED Note was modified; 2) Erickson does not actually dispute the arrears amount stated in the NOD; 3) the default amount was not the determinative factor for her execution of the loan modification agreement; 4) Erickson apparently did not depose RTED or otherwise inquire into how it determined the loan balance and arrears; and 5) RTED apparently had sufficient information to prepare its "Itemization of Unpaid

Erickson immediately contacted RTED regarding the NOD, and she promptly submitted (on March 16, 2015) a loan modification request. While RTED was willing to modify the loan, it required that Erickson first go on title to the Beach Court property. Erickson thereafter retained an attorney who filed a Spousal Property Petition ("Petition") with the probate division of the Contra Costa County Superior Court. The Petition stated that Blair and Erickson purchased the Beach Court property "using solely the monies of the marriage (community property) of the Petitioner and the Decedent (all acquired after the date of the marriage and not through gift or inheritance)" and requested that the Superior Court "confirm to the Petitioner (surviving spouse) the [Beach Court property] described herein as Decedent's one-half share of the community property passing to the Petitioner" without the need for probate administration. The Superior Court signed an order approving the Petition on May 21, 2015. The Superior Court's form order states, in pertinent part, that the Beach Court property "is a property that belonged to the surviving spouse . . . under Family Code section 297.5 and Probate Code sections 100 and 101, and the surviving spouse's . . . ownership upon decedent's death is confirmed." The Petition did not disclose to the Superior Court that Blair was described as an unmarried man on the Beach Court grant deed. RTED was not a party to the Petition, and the Petition order simply confirmed that there was no need to administer Blair's alleged one-half community property interest in the Beach Court property which henceforth was owned by Erickson.

Erickson signed the parties' "Forbearance/Modification Change of Terms Agreement" (the "RTED Forbearance") on March 24, 2015. RTED signed it more than three months later, on June 30, 2015, after the entry of the Petition order. By March 2015, the RTED Note's balance was approximately $270,000. The RTED Forbearance, among other things, substantially decreased the RTED Note's interest rate, reduced the note's "Interest Bearing Principal Balance" to $120,000, decreased Erickson's monthly note payment to $500, deferred a substantial portion of the loan's principal balance without interest, and made the deferred balance amount eligible for forgiveness if Erickson

Installments" which constituted the arrears listed in the NOD.

substantially remained current over the next three years.[4]  Paragraph 18 of the RTED Forbearance also contained a release clause, which provided:

> RELEASE OF CLAIMS:  Each Borrower, for himself or herself and his or her heirs, personal representatives, successors and assigns, hereby jointly and severally, knowingly and voluntarily, releases, discharges, and covenants not to sue RTED AMERICA, LLC, any owner of the Loan, and any of their predecessors, successors and assigns, representatives, agents, affiliates, parents, subsidiaries, officers, employees, directors and shareholders (collectively, the "Released Parties") from any and whatsoever kind or nature, whether known or unknown, whether legal or equitable, which he or she has, or may assert as of and through the date of this Agreement against any of the Released Parties directly or indirectly, or in any manner connected with any event, circumstance, action or failure to act, of any sort or type, which was related or connected in any manner, directly or indirectly, to the Loan or any collateral securing the Loan.
>
> If applicable, each Borrower voluntarily waives the provision of California Civil Code Section 1542, and any other provision or statute of like effect in the state where the property is located, which provides:  "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.[5]

RTED Forebearance at ¶18.

Erickson asserts that she signed the RTED Forbearance under duress and that its terms are unconscionable.  She testified during her deposition that she thought that the RTED Note had been written off and that she was in a panic when she received the NOD.  However, as noted previously, while Erickson signed the RTED Forbearance on March 24, 2015, it was not fully executed until June 30, 2015, when RTED signed it.  In the interim Erickson - at RTED's request - consulted and retained an attorney to file the Petition and

---

[4] Like the HAMP modification of the senior note, RTED agreed to forgive one-third of the deferred balance for each year (in this case, 2016, 2017, and 2018) that Erickson remained current under the RTED Forbearance.

[5] The court notes that the release should have, but failed to, include the word "claim" when describing what was being released, discharged, etc.  Given the title to the paragraph and the text's otherwise clear intent, this omission does not create a triable issue of fact regarding its meaning.  *See* RTED Forbearance at ¶18.  Erickson does not argue otherwise.

obtain an order transferring Blair's purported community property interest in the Beach Court property to her. She also testified that a conversation that she had with RTED representative Matthew Kelly after receiving the NOD calmed her down.

Erickson defaulted on the RTED Forbearance in April 2018, and RTED and Erickson executed a second forbearance agreement in March 2019. The terms of this second forbearance agreement "preserved and confirmed" the terms of the RTED Forbearance. In March 2021, the parties further modified the RTED Note by extending its maturity date one year to April 1, 2022.

Erickson filed the underlying Chapter 13 case on October 13, 2021, and RTED timely filed a $208,597.31 secured proof of claim. The proof of claim is accompanied by a "Mortgage Proof of Claim Attachment" which contains a loan payment history specifically detailing Erickson's default under the RTED Note, as modified by the RTED Forbearance. Erickson filed this adversary proceeding on January 18, 2022. Her amended complaint objects to RTED's proof of claim on several grounds and asserts recoupment claims arising from alleged violations of the federal Truth in Lending Act and the state of California's Rosenthal Fair Debt Collection Practices Act. The factual predicates to these claims predate the RTED Forbearance. Erickson also seeks, via recoupment, to invalidate RTED's deed of trust under California Family Code §1102.

**RTED Summary Judgment Motion**

RTED dedicates much of its motion to defending its deed of trust. It argues that its junior deed of trust is valid as a matter of law and equity because Erickson: 1) cannot avoid it under California Family Code §1102; 2) released this Family Law claim when she executed the RTED Forbearance; and 3) is precluded from raising this argument due to unclean hands and estoppel. RTED also contends that its actions are otherwise privileged under California Civil Code §47(b).

Family Code §1102(a) generally requires both spouses to "join in executing an instrument by which. . . community real property or an interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered." Cal. Fam. Code §1102(a)

(West 2023). Where, for example, only one spouse executes a deed of trust against community property, §1102(d) allows the other spouse to avoid the deed of trust so long as the avoidance action is commenced within one year of the deed of trust's recordation with the county recorder's office. Cal. Fam. Code §1102(d). Section 1102 was designed to protect a spouse from the unauthorized alienation or encumbering of marital property by the other spouse. *Safarian v. Govgassian*, 47 Cal.App.5th 1053, 1070 (2020). Erickson commenced this adversary proceeding more than sixteen years after the junior deed of trust was recorded with the Contra Costa County Recorder's office, which seemingly would render this claim for relief almost sanctionable on its face. Erikson, however, cleverly seeks to void the deed of trust by way of recoupment. The United States Supreme Court defines recoupment as "in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." *Bull v. United States*, 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421 (1935).[6]

Erickson's effort to void RTED's lien would be time-barred if brought as an affirmative claim. To avoid this result, Erickson must assert this claim under the recoupment doctrine and demonstrate that her claim: 1) arises from the same transaction as RTED's secured claim; and 2) is asserted only as a defense to a timely filed claim. *See*, *e.g.*, *Smith v. Am. Fin. Sys. (In re Smith)*, 737 F.2d 1549, 1553 (11th Cir. 1984). Erickson meets these requirements. First, it is abundantly clear that Erickson's §1102 claim arises directly from the same transaction that created RTED's secured claim – the purchase of the Beach Court property and the execution of the junior note and deed of trust in November

---

[6] Stated differently, "Recoupment goes to the foundation of the plaintiff's claim; it is available as a defense, although as an affirmative cause of action it may be barred by limitation. The defense of recoupment, which arises out of the same transaction as plaintiff's claim, survives as long as the cause of action upon the claim exists. It is a doctrine of an intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction, why the plaintiff's claim in equity and good conscience should be reduced."*Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp.2d 176, 188 (S.D. Tex. 2007) (citation omitted). The court will address the equity of Erickson's recoupment defense when it reaches RTED's estoppel and unclean hands arguments.

2006. Second, the mere fact that Erickson is the plaintiff herein does not preclude this court from determining that her §1102 claim was raised defensively. Erickson filed this adversary proceeding in response to RTED's timely-filed secured proof of claim, and "[t]he filing of a proof of claim, by its very nature, is an action to collect a debt." *Jones v. Progressive-Home Fed. Sav. and Loan Ass'n (In re Jones)*, 122 B.R. 246, 250 (W.D. Pa. 1990). Allowing Erickson to raise this defense at this (otherwise late) stage is not a precedent setting holding. *See*, *e.g.*, *Id.* at 251; *Salazar v. First Residential Mortg. Servs. Corp. (In re Salazar)*, 2011 Bankr. LEXIS 1159, at *16 (D. Md. Mar. 30, 2011); *Coxson v. Commonwealth Mortg. Co. of Am., L.P. (In re Coxson)*, 43 F.3d 189, 194 (5th Cir. 1995).

Undaunted, RTED argues that §1102 is inapplicable because the Beach Court property was not community property when its deed of trust was recorded. It contends that Blair took title as an "unmarried man" and that he made unambiguous representations in the deeds of trust that he alone held full fee title. While all this may be true, material questions of fact preclude this court from determining as a matter of law that RTED has overcome California's community property presumption.

California Family Code §760 provides that "[e]xcept as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." Cal. Fam. Code §760 (West 2023). Section 760 creates a general presumption regarding how married couples take title to property, and its application is not limited to marital dissolution actions. *See Speier v. Brace (In re Brace)*, 9 Cal.5th 903, 927-28, 266 Cal.Rptr.3d 298, 470 P.3d 15 (2020). Because this presumption "is not a title presumption, virtually any credible evidence may be used to overcome it, including tracing the asset to a separate property source, showing an agreement or clear understanding between the parties regarding ownership status and presenting evidence the item was acquired as a gift." *In re Marriage of Ciprari*, 32 Cal.App.5th 83, 91 (2019) (citations omitted); *see also*, *Trenk v. Soheili*, 58 Cal.App.5th 1033, 1046 (2020).

Material questions of fact exist regarding who Blair and Erickson believed owned

the Beach Court property after the sale closed, and simply pointing to how title was taken and what representations Blair made in form deeds of trust do not, as a matter of law, overcome the community property presumption. Without weighing in on whether Blair misrepresented his marital status to the original lenders, questions of fact exist regarding how Erickson and Blair considered their respective interests in their residence. Erickson's deposition testimony indicates that she agreed to the artifice only to obtain better interest rates on the two secured notes, and there is no indication that she agreed to forego her community property rights in return. Moreover, the Beach Court property was purchased with no money down, eliminating any argument that Blair used his separate funds to buy the property. In addition, Blair made payments on the junior note for several years, and there is no evidence before this court that he did so with separate funds.[7] Finally, the Petition and Petition order indicate that Erickson believed that she had a one-half community property interest in the Beach Court property and that she only needed a court order to obtain Blair's community property interest.

RTED next argues that Erickson released her recoupment rights in the RTED Forbearance. The court agrees. A release clause is governed under general principles of contract law. *General Motors Corp. v. Superior Court*, 12 Cal.App.4th 435, 439 (1993) (citations omitted). The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. Cal. Civ. Code §1636 (West 2023); *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264,10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code §1638 (West 2023); *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal.App.4th 944, 956 (2003). When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. Cal. Civ. Code §1639 (West 2023). "The words of a contract are to be understood in their ordinary and popular sense." Cal. Civ.

---

[7] The evidence suggests that Erickson worked as an insurance broker during the marriage.

Code §1644 (West 2023); *see also Lloyd's Underwriters v. Craig & Rush, Inc.*, 26 Cal.App.4th 1194, 1197–98 (1994) ("We interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made").

Furthermore, California recognizes the objective theory of contracts under which "[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Berman v. Bromberg*, 56 Cal.App.4th 936, 948 (1997) (citation omitted); *Titan Grp., Inc. v. Sonoma Valley Cnty. Sanitation Dist.*, 164 Cal.App.3d 1122, 1127 (1985). The parties' undisclosed intent or understanding is irrelevant to contract interpretation. *Berman v. Bromberg*, 56 Cal.App.4th at 948 (citing *Winet v. Price*, 4 Cal.App.4th 1159, 1166, fn 3 (1992)).

When the RTED Forbearance is read in context, paragraph 18's broad release language included Erickson's existing legal and equitable claims against RTED, whether asserted offensively or defensively. As noted above, Paragraph 18, while titled as a 'RELEASE OF CLAIMS," omits to include this word in its text. While the court can only ascribe this to deficient proof-reading, Rande Johnsen, who signed the agreement on RTED's behalf, stated that RTED would not have executed the agreement without the release of claims referenced in the paragraph. Erickson offers no extrinsic evidence or alternative interpretation; instead, she states that she did not agree to the release because she did not fully read the agreement before signing it. Her ignorance of its terms does not, however, prevent the agreement's enforcement. *See generally, Lama v. Comcast Cablevision*, 14 Cal.App.4th 59 (1993) (release was enforceable where counsel did not pay attention to the language of the release; any mistake as to the meaning of the release was a unilateral mistake by counsel).[8]

---

[8] Black's Law Dictionary broadly defines the term "claim" to include "1. The aggregate of operative facts giving rise to a right enforceable by a court. . . . 2. The assertion of an existing right; any right to payment or to an equitable remedy . . . ." *Black's Law Dictionary* 264 (8th ed. 2004). Erickson's recoupment rights fall squarely within this definition.

Erickson attacks the validity of the RTED Forbearance on several grounds. She first asserts that the RTED Forbearance is a product of fraud because RTED was not going to foreclose on the Beach Court property (due to lack of equity in the property), and that it used the NOD to extract note payments from her. Erickson's own declarations undermine this argument. Erikson's supporting declarations state that the Beach Court property was worth $655,000 in March 2015, and that due to the HAMP loan modification, the March 2015 balance of the senior note was approximately $395,000, leaving more than enough equity to cover the RTED Note.[9]

Erickson further argues that the release violates California Civil Code §1668, which provides "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ. Code §1668. This argument falls short. Courts do not adhere to the statute's literal terms but interpret it to prohibit parties from granting themselves licenses to commit future aggravated wrongs, or future negligent acts when certain public policies are implicated. *City of Santa Barbara v. Superior Court*, 41 Cal.4th 747, 754-55, 62 Cal.Rptr.3d 527, 161 P.3d 1095 (2007) (outlining the history of the case law interpreting §1668). Courts therefore have routinely held that the statute does not prevent parties from agreeing to settle disputes or to release claims relating to past conduct. *See*, *Daneshmand v. City of San Juan Capistrano*, 60 Cal.App.5th 923, 935 (2021) (citing §1668 and *City of Santa Barbara v. Superior Court* and stating that they address contracts releasing parties from liability for future tortious acts, not to prohibit settlements of disputes relating to past conduct); *SI59, LLC v. Variel Warner Ventures, LLC*, 29 Cal.App.5th 146, 152 (2018) (finding that §1668 prohibits exculpation from future torts); *Frittelli, Inc. v. 350 North Canon Drive, LP*, 202

---

[9] Erickson's attempt to rely on the Beach Court property's "assessed value" is unavailing. The Contra Costa County Tax Assessor's assessed value of the property is not a reflection of its market value. Erickson also cursorily states that she would not have signed the RTED Forbearance had she known that RTED did not have her loan transaction history. This argument falls flat since Erickson does not argue that the amount listed in the NOD was incorrect.

Cal.App.4th 35, 43 (2011) ("[T]he public policy disfavoring attempts by contract to limit liability for future torts .. . . finds expression in [§1668]"); *Watkins v. Wachovia Corp.*, 172 Cal.App.4th 1576, 1587, fn 12 (2009) (§1668 is meant to prohibit contracts releasing liability for future torts, not to prohibit settlements of disputes relating to past conduct); *Health Net of Cal., Inc. v. Dep't of Health Servs.*, 113 Cal.App.4th 224, 227 (2003) (§1668 prevents a party from imposing a contractual prohibition against the recovery of damages for any future violations of statutory or regulatory law). The RTED Forbearance's release therefore does not violate §1668, and by executing the agreement, Erickson released her pre-existing Family Code, TILA and Fair Debt and Collection Act claims against RTED.

Erickson next asserts that the RTED Forbearance is unconscionable. An unconscionable contract ordinarily involves both a procedural and a substantive element: (1) oppression or surprise due to unequal bargaining power, and (2) overly harsh or one-sided results. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000). Nevertheless, "a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." *Id.* (citations omitted). The undisputed facts regarding that agreement's execution and its terms demonstrate, as a matter of law, that the RTED Forbearance is not unconscionable. Erickson was aware of the junior note and deed of trust, and she knew, after Blair's death, that she was not making payments on the junior note.[10] RTED's recordation of the NOD was not a product of oppression or unequal bargaining power, but the straightforward application of its rights under California Civil Code §2923, *et seq*. Moreover, as discussed above, its terms were not overly harsh or one-

_____

[10] Erickson also argues that Blair received an offer in March 2011 from one of RTED's predecessors (Greenwich Investors XXXIII, LLC) to reduce the note's original $160,000 principal by half. Her first declaration states that they signed and returned the agreement; her second declaration states that they did not sign and return it. Regardless, Erickson's claim objection does not contain this substantive assertion.

sided. Accordingly, the RTED Forbearance is not unconscionable.[11]

For the same reasons, Erickson has not demonstrated that RTED exercised any undue influence over her decision to sign the RTED Forbearance. In California, "undue influence results from: (1) [T]he use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; (2) [T]aking an unfair advantage of another's weakness of mind; or (3) [T]aking a grossly oppressive and unfair advantage of another's necessities or distress." Cal. Civ. Code §1575 (West 2023); *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 25 F.4th 613, 625 (9th Cir. 2022). Undue influence "cannot be used as a pretext to avoid bad bargains or escape from bargains which refuse to come up to expectations." *Martinez-Gonzales v. Elkhorn Packing Co., LLC,* 25 F.4th at 525 (citing *Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal.App.2d 123, 132 (1966)). Erickson has not argued what "authority" RTED had over her, nor has she demonstrated that she suffered from "any weakness of mind" when the RTED Forbearance was finally implemented or during the several months that passed between Erickson's receipt of the NOD, her consultation with an attorney regarding RTED's request to take title to the Beach Court property, and RTED's execution of the agreement. Moreover, Erickson has not demonstrated that RTED took grossly oppressive and unfair advantage of her. In fact, as stated above, the RTED Forbearance greatly benefitted her.[12] Her inability to fully comply with its terms does not alter the court's determinations.

Recoupment rights are equitable in nature and subject to equitable defenses. RTED

---

[11] By 2015, the RTED Note had some of the markings of a "Zombie" mortgage. Notwithstanding five years of missed payments, RTED's predecessors had not commenced or even threatened to commence foreclosure proceedings. To the extent that there are (applicable) state and federal remedies against Zombie mortgage foreclosures, Erickson has not asserted them.

[12] Erickson also spends a paragraph futilely arguing that the RTED Forbearance is void due to "duress." *See* Cal. Civ. Code §1569. Erickson's analysis makes little sense, and the court need not address it. The court has a similar reaction to Erickson's equally cursory argument that RTED cannot enforce the RTED Forbearance because of its "unclean hands." The court directs the parties to its "unclean hands" analysis, *infra*.

thus argues that Erickson's attempt to void its lien is barred by the doctrine of unclean hands and estoppel.[13]  RTED first contends that Erickson is equitably estopped from attempting to void its deed of trust under California Family Code §1102.  To successfully invoke equitable estoppel under California law, RTED must establish: "(a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it." *Simmons v. Ghaderi*, 44 Cal.4th 570, 584, 80 Cal.Rptr.3d 83, 187 P.3d 934 (2008).   Put more plainly, the party asserting estoppel must have relied upon the other party's conduct or statements to his injury.  *Golden Gate Water Ski Club v. Cnty. of Contra Costa*, 165 Cal.App. 4th 249, 257 (2008) (citation omitted).  RTED has not established that equitable estoppel applies here.   Simply, there is no evidence that Erickson made any misrepresentations or factual concealments to RTED, and RTED has not presented any evidence regarding what facts it relied on when it purchased the junior note and deed of trust in 2014.  To the extent RTED argues that it stands in the shoes of the original note and deed of trust holder, there is similarly no evidence what Realty Mortgage, LLC knew about Blair's marital status when it lent him the funds.

RTED next argues that Erickson is estopped by the doctrine of quasi-estoppel, "which is based upon the principle that one cannot blow both hot and cold, or that one 'with full knowledge of the facts shall not be permitted to act in a matter inconsistent with his former position or conduct to the injury of another.'"  *Brown v. Brown*, 274 Cal.App.2d 178, 189 (1969) (citations omitted).  The purpose of estoppel is to avoid sanctioning unconscionable conduct.  *Id.* at 188.   While RTED must show it has been injured, it need not prove reliance.  *Heuer v. Heuer*, 152 N.J. 226, 237, 704 A.2d 913 (1998) (citations omitted).

---

[13] RTED also asserts, in passing, that Erickson's recoupment claims are barred by laches.  RTED does not discuss any of the doctrine's elements and notwithstanding Federal Rule of Civil Procedure 56(f), this court will not consider this argument on its own.

Having enjoyed the benefits of homeownership since 2007, Erickson is estopped from voiding RTED's lien. Erickson knowingly allowed Blair to take sole title to the Beach Court property, and her decision allowed the couple to finance the purchase at a more affordable interest rate. Since Blair fully financed this purchase, he could not have purchased the house without the junior note. The Ericksons made several years of payments on the junior note, and Erickson herself twice modified it. She only now seeks to avoid it because of her repeated defaults under the modification agreements.[14]

It would be unfair, if not unconscionable, to allow her to void RTED's deed of trust under §1102. Family Code §1102 protects an unwitting spouse from undisclosed transactions affecting community property. *Safarian v. Govgassian*, 47 Cal.App.5th at 1070. This is not the case here. Erickson allowed Blair to take title to the Beach Court property in order to lower their house payments. They purchased the house with no money down and therefore needed the second note to close the deal. Her tacit acknowledgment of the junior note and deed of trust, successful efforts to modify the RTED Note terms, along with the benefits derived from her many years of home ownership fly in the face of her attempt to void the very obligation which allowed her to reside in the Beach Court property. Should this court allow Erickson to void the deed of trust, RTED's damages in this Chapter 13 is self-evident. She is therefore estopped from invoking her rights under §1102.

RTED also contends that Erickson's "unclean hands" prevent her from avoiding its lien. The defense of unclean hands arises from the maxim, "He who comes into Equity must come with clean hands." *Blain v. Doctor's Co.*, 222 Cal.App.3d 1048, 1059 (1990). The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim. *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 US 806, 814-15, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); *Hall v. Wright*, 240. F.2d

---

[14] Erickson's statement that she only recently learned of her §1102 rights is irrelevant.

787, 794-95 (9th Cir. 1957). The defense is available in legal as well as equitable actions. *Burton v. Sosinksy*, 203 Cal.App.3d 562, 574 (1988) (citing *Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists*, 227 Cal.App.2d 675, 728 (1964)).

The unclean hands doctrine also protects judicial integrity and promotes justice by making a plaintiff answer for his own misconduct in the action. It prevents "a wrongdoer from enjoying the fruits of his transgression[.]" *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. at 815.

Not every wrongful act constitutes unclean hands, and the scrutinized conduct need not constitute a crime or an actionable tort. Instead, any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine. *Id.* at 814-15; *DeRosa v. Transamerica Title Ins. Co.*, 213 Cal.App.3d 1390, 1395-96 (1989).

Finally, the misconduct in question must relate directly to the cause at issue. Past improper conduct or prior misconduct that only indirectly affects the problem before the court does not suffice. "[T]here must be a direct relationship between the misconduct and the claimed injuries . . . .'so that it would be inequitable to grant [the requested] relief.' " *Mattco Forge, Inc. v. Arthur Young & Co.*, 52 Cal.App.4th 820, 846 (1997). "The issue is not that the plaintiff's hands are dirty, but rather ['that] the manner of dirtying renders inequitable the assertion of such rights against the defendant[.']" *Id.* (quoting *Martin v. Kehl*, 145 Cal.App.3d 228, 239-40, fn.1 (1983)). The misconduct must "prejudicially affect . . . the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief." *Id.*

These general principles have led California courts to apply a three-pronged test to determine the impact of a plaintiff's allegedly improper conduct. A finding of unclean hands depends on: (1) analogous case law; (2) the nature of the misconduct; and (3) the relationship of the misconduct to the claimed injuries. *Blain v. Doctor's Co.*, 222 Cal.App.3d at 1060; *Kendall-Jackson Winery, LTD v. Superior Court*, 76 Cal.App.4th 970, 978-79 (1999); *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal.App.4th 612, 618-21 (1992); *see*

*also*, *CrossTalk Prods., Inc. v. Jackson*, 65 Cal.App.4th 631, 641-43 (1998) (discussing and applying the *Blain* factors).

The court cannot find as a matter of law that Erickson's claims are barred by unclean hands. RTED has not provided this court with analogous case law, and the court is unclear what constitutes the relevant misconduct. Accordingly, the court cannot grant summary judgment based on the doctrine of unclean hands.[15]

For the above reasons, this court grants RTED's motion for summary judgment. The court need not reach RTED's standing and privilege arguments.

**Erickson Summary Judgment Motion**

Erickson's summary judgment motion seeks to sustain her objections to RTED's secured proof of claim and demonstrate the merits of her three recoupment claims. She also seeks to strike many of RTED's affirmative defenses.

**A. Objections to RTED Proof of Claim**

Erikson has objected to RTED's proof of claim on several grounds, and her summary judgment motion reiterates her assertion that the RTED Forbearance is invalid. This court has addressed these arguments *infra* and determined, based on the undisputed facts, that the RTED Forbearance is not invalid due to fraud, undue influence, unconscionability, duress, unclean hands or pursuant to California Civil Code §1668.

Erickson also filed a more pedestrian objection to the proof of claim amount, arguing that RTED's lack of a loan transaction history undermines its calculation of the RTED Note balance. Yet Erickson: a) does not dispute that first Blair and then she defaulted on the RTED Note payments and later the RTED Forbearance terms; b) does not claim to know what the RTED Note balance is; and c) does not question the accuracy of the: (i) Itemization of Unpaid Installments that RTED prepared on or about March 3, 2015; (ii) April 1, 2015 Beneficiary Demand for Payment that RTED apparently sent to Erickson;

---

[15] As discussed *infra*, Erickson asserts that RTED's "unclean hands" prevent it from enforcing the RTED Forbearance's release. Erickson does not provide this court with any analogous case law nor identify any RTED action that constitutes misconduct.

and (iii) loan payment history attached to RTED's proof of claim. Equally as significant, the RTED Forbearance - which Erickson signed without objection - states that the RTED Note payoff amount as of April 1, 2015, was $271,252.94. Finally, the RTED proof of claim is based on the amounts due under the RTED Forbearance. The "Mortgage Proof of Claim Attachment" starts with a $120,000 principal balance, indicates that Erickson first defaulted on the RTED Forbearance in April 2018, lists the sporadic payments that she made thereafter, and details the foreclosure expenses that RTED incurred. The Mortgage Proof of Claim Attachment also states that the total debt due includes the $76,565.48 that would have been forgiven under the RTED Forbearance if Erickson had not defaulted in April 2018.[16] Simply stated, RTED's proof of claim is based on the obligations created by the RTED Forbearance, making the absence of a pre-2015 loan transaction history virtually irrelevant.

The RTED proof of claim satisfies all elements of Fed.R.Bankr.P. 3001. The proof of claim is accompanied by a) the note and deed of trust, b) evidence of the deed of trust's recordation, c) an itemized list of the interest, fees, expenses or charges associated with the proof of claim, and d) a statement regarding the amount necessary to cure the default. "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed.R.Bankr.P. 3001(f). A party objecting to a proof of claim "must produce evidence tending to defeat the claim that is of a probative force equal to that of the creditor's proof of claim." *Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.)*, 178 B.R. 222 (9th Cir. BAP 1995), *aff'd*. 91 F.3d 151 (9th Cir. 1996) (quoting *In re Simmons*, 765 F.2d 547,552 (5th Cir.1985)). Erickson has not met this burden, nor has she demonstrated that a material question of fact exists regarding the amount she owes RTED.

---

[16] As stated *infra*, Erickson and RTED modified the RTED Forbearance in March 2019 after Erickson failed to make her April 2018 – December 2018 payments. Erickson acknowledged in the March 19, 2018 "Forbearance Agreement" that RTED was not required to forgive $76,565.48 of the RTED Note's deferred balance because of her 2018 defaults.

## B. Recoupment Claims

Erickson asserts three defensive recoupment claims. Erickson first asserts that "Debtor may claim in recoupment the interest and fees claimed by RTED for the period 2/1/2014 to 3/31/2015, as well as attorney fees and costs." Notwithstanding that RTED's proof of claim does not include such interest and fees, Erickson released this recoupment right in the RTED Forbearance.

Erickson next argues that RTED violated California's Rosenthal Fair Debt and Collection Practice Act by using "false, deceptive or misleading representation(s) or means in connection with the collection of any debt," including: a) misrepresenting the character, amount of legal status of the debt; b) representing or implying that nonpayment of an debt will result in the sale of any property, unless such action is lawful and the creditor intends to take such action; c) threatening to take any action that cannot legally be take or that it not intended to be taken; d) demanding a higher amount that that which is actually owed; and e) using an unfair or unconscionable means to collect or attempt to collect any debt, by taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present intention to take possession of the property. Erickson's FDCA claims are directed towards the NOD, and this court has already addressed these arguments. To reiterate, to the extent that Erickson's claim pre-date the RTED Forbearance, she released them. Second, the undisputed facts demonstrate that there was sufficient equity in the Beach Court property to make a trustee sale a viable option, and RTED was appropriately exercising its foreclosure rights under California law. RTED was also not demanding payment of an amount that exceeded what was owed under the RTED Note.

Erickson also asserts that she may, via recoupment, void RTED's deed of trust under California Family Code §1102. As stated above, Erickson released this claim in the RTED Forbearance.

Finally, Erickson also seeks summary judgment against RTED's affirmative defenses of failure to state a claim for relief, statute of limitations, lack of standing, waiver,

release, estoppel, laches, unclean hands, ratification, parol evidence rule, misrepresentation, not a debt collector (presumably applicable to the FDCA claim), and privilege under Civil Code §2924. The court has already addressed the merits of several of these affirmative defenses herein and need not repeat its analysis. It is also unnecessary to address the merits of the remaining affirmative defenses given the court's findings.

For the reasons stated above:

1. Erickson's objections to RTED's proof of claim are overruled.

2. Erickson's motion for summary judgment/summary adjudication is denied.

3. RTED's motion for summary judgment is granted, and the first amended complaint is dismissed.

**\*\*\*END OF ORDER\*\*\***

1  Adversary No. 20-4002 CN

2

3                    **COURT SERVICE LIST**

4  Recipients are ECF participants

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28